May it please the Court, Stephen Kinnaird for Petitioners. Today I will address the personal jurisdiction issues and my colleague Mr. O'Brien will address equitable tolling. We'd like to reserve two minutes for rebuttal. Please watch your clock. Yes, ma'am. Plaintiffs have failed to meet multiple jurisdictional requirements under the Calder v. Jones effects test. And the first of these is that the extraterritorial acts must cause effects within the forum. And the Supreme Court has declared that the effects doctrine authorizes personal jurisdiction where intentional, tortious acts taken abroad result in injury in the forum. And injury- Counsel, before you get too far into your argument, I'd just like to clarify one thing just for the framing of the issue. I understand you're going to argue personal jurisdiction. Your colleague will argue the tolling question. What burden do you have to show in order to get rid of mandamus here today? And what have you got to show with respect to personal jurisdiction? I assume that you can't just show that the district court was wrong on personal jurisdiction. You have to show the district court was wildly wrong, that it flies in the teeth of something else, because it can't just be de novo review here on a legal question of personal jurisdiction. Not on mandamus. On mandamus, I do think that clear and indisputable relief is the standard. But that doesn't mean that you have to take it to the higher level of proof of the law. At a minimum, it seems to me, you're going to have to show that the district court is wrong on personal jurisdiction and admire, you know, where you're going and what you're trying to do in framing that. But you're going to have to show something beyond mere error on the part of the district court to get rid of mandamus. What is it that you're going to have to show? Well, I do think that we have to show – I think clear error is one of the factors under Baumann that factors into the discretionary determination. So I think if we show – At the very least, then, you have to show clear error on the part of the district court and not mere error. I don't think that's a prerequisite. But here we do have a showing that is directly contrary to precedent in both the Supreme Court and the Ninth Circuit. And the Supreme Court has held that you have to show injury. And injury is an invasion of a legally protected interest. And here, all of Mr. Hassan's injuries occurred in the UAE, not in the U.S. They were complete in 1985, and all of his claims accrued by 1985, which is why he must resort to equitable tolling. So without a U.S. transaction or a U.S. injury, there can be no call to jurisdiction. The district court was proceeding here under – on a theory of rule 4K2. That is, that you could look at the context between – that you could look at the context with the United States as a whole rather than simply with the State of California. That's right. And the district court cited a number of things, which were not only Mr. Hassan's own injuries in the UAE, but the threats to his family and the implicit threats to both to national security and to U.S. domestic interests. Can the district court consider those injuries to nonparties to the suit? We would submit no, Your Honor. Okay. What's the clear error in the district court's ruling on that? Well, because I think for a number of reasons, his injury – there are multiple grounds, I think, of clear error under purposeful direction, under arising out of, and under the fact of injury in the forum. And I can take them seriatim if you would like. As far as the one ground of interference with the business interests of his American clients, it's important to note that the putative economic advantage here is competing in the UAE for UAE contracts to deliver aircraft and other systems in the UAE. But those were American companies that he was representing. Yes, Your Honor. But while it is true that sometimes generalized business injury can be attributed to the principal place of business, courts have uniformly held that for – If his clients were part of this lawsuit, would that change things? Or if his wife had signed on to the suit, would that change things? No, Your Honor, because he has to show that his own claim arises out of these contacts. But his wife's claim would be good because she was clearly in the United States when she was threatened. Yes. She would have a potential claim. So there would be jurisdiction – if she had brought her own claim against him, there would be jurisdiction in California. For her, yes, Your Honor. But it's just courts have uniformly held when confronted with claims for tortious interference that you look to the situs of the injury, which may or may not be the principal place of business for the company. And any other rule, I think, would be untenable and would be, as a matter of justice and also international comedy, if wrongs done in foreign competition to an American company would subject a foreign wrongdoer to the jurisdiction of the U.S. courts. Now, the D.C. Circuit in the Malwani v. Bin Laden case did rely on an intent to harm U.S. interests by conducting terrorist activities in Africa. Now, in light of that case, what makes the district court's judgment here clear error? Your Honor, there's a footnote in Malwani where they actually disclaim any reliance on the effects doctrine. And so I think the way that that case is best interpreted – Which footnote is that? I don't have it right in front of me, Your Honor. I can look at it during the argument and find that, I think, if I have it. But what you had in Malwani was an overarching conspiracy that included violent, overt acts in the United States prior to the Kenyan bombing. So I think that that is a case in which the entire conspiracy involved U.S. acts and targeting of U.S. residents, and the injury to the Kenyan plaintiffs was held to be proper personal jurisdiction. Here, we don't have any of that. And I think it's also important to recognize the Schwarzenegger case said in regard to tortious interference with – as applied here to the tortious interference with his client's interests, they held that when you have economic injury in a forum, and even if the defendant knew that the plaintiff resided in the forum, that alone is not enough to constitute purposeful direction of activities to the United States. I would also add, Your Honor, that his claims regarding interference with American businesses – and you can see this on the appendix at 156 – rest merely on his subjective belief that that was a motivation. And that does not meet the Bell v. Twombly allegations of plausibility with regard to purposeful direction. He does not cite any statement from the torturers that that was their motivation. He does not have any objective evidence of the individualized targeting of a specific American company or specific contracts or any loss that they occurred. He just says, I have this belief European companies got contracts. I would submit that would not be enough for a jury if those were the only facts proven to rule in favor of Mr. Hassan. And finally, those are the injuries not to him, but to American companies who are no party to this lawsuit. Another basis that the district court identified was the emotional harms that he continued to suffer after he returned to the United States. And I would point out, A, consequential harms are not injury, but most importantly, they cannot give rise to his cause of action because, by definition, consequential harms arise after the cause of action has accrued, and under the but-for test of causation, they cannot be the but-for cause of the accrual of the cause of action. So I think the emotional harms he suffered subsequently have to be out of the case. The other basis – and I'd like to return to the particular threats. Any threats that were made to him during his custody as a part of inflicting emotional distress, and to the extent they could even meet the very demanding torture TVPA standard regarding emotional distress from threats and dangers to third parties, and there's a specific statutory provision, but that injury would have occurred in the UAE, not in the U.S. And any threat – he has one threat that apparently was made to him as he was departing the UAE, but that, again, doesn't meet the requirement of causation. It's not a but-for cause of the injuries he suffered because his claims had already accrued. As I've already discussed with Judge Bybee, the – any threats to his wife, some of them occurred in the UAE, and there was one in the United States, but that – there's no evidence that he even knew about that, and that would not be a but-for cause of his torture claims. So I don't think the threats can satisfy personal jurisdiction. And then, finally, he has the allegations regarding the CIA and the consul. Well, the allegation is about – is that essentially combating foreign espionage by the CIA in your own home country automatically subjects a foreign official to the jurisdiction of U.S. courts is untenable. There's no personal direction towards the forum to combat CIA espionage in the foreign country. And then the other thing is he denies that he was a CIA operative, and therefore there is no effect either of the CIA or upon him that can justify effects jurisdiction. Well, of course – of course we have – we have doctrines of, you know, imputed political opinion, for example, in the immigration area in which – in which if somebody who is torturing you believes that you are X, even if you're in fact not, it doesn't really matter. Well, I think it would matter for the effects test, Your Honor. I think there would have to be a – Well, it's a small consolation to him to say, you know, thanks for torturing me for being a CIA agent, but in fact I'm not. I mean, that's just not much consolation to him. It may not be much consolation, but I don't think it meets the legal standard of effects jurisdiction. Because it actually hasn't affected the CIA, is your point? It has not affected the CIA. And, again, his injury from that – he certainly has an injury under those facts, but that injury occurred in the UAE. How do you – how do you carry that analysis with respect to the businesses where he did in fact represent U.S. interests in the UAE and was deterred from going back to the UAE and pursuing anything further there? Doesn't your analogy now work against you with respect to the businesses because he did represent such businesses and he was in fact deterred? Well, if he had a claim for deprivation of economic opportunity because he was deterred from going back, perhaps that claim could go forward on a personal jurisdiction. He doesn't. His torture claim is an independent injury. It was complete in the UAE, and that simply does not give rise to effects jurisdiction under Culver. And I would point out it's also – I've pointed out to the court the deficiencies under Twombly, but there's another one that's simply, I think, facially implausible. You have the senior elder sons of the emir of Abu Dhabi who – why would they need to torture a consultant to – in order to get contracts for their foreign clients, aircraft contracts? So he just doesn't assert enough there, I think, even if he didn't have all the deficiencies under Culver that his claim does have for personal jurisdiction. It doesn't have enough under Twombly to show purposeful direction. Did the district court address the Twombly argument? Your Honor, I don't know that it did. Was it even made to her? I think that – I don't know that it was made in those terms, Your Honor. But I think that the – that in order to show it was addressed to the district court, that it didn't constitute purposeful direction to the United States. So – and for all the reasons I've stated, but certainly he has to – in order to satisfy that obligation, he has to satisfy Twombly. So, you know, I keep going back to this mandamus standard that we have to apply. And we don't usually have this set for an oral argument. We usually do these mandamus petitions and motions. So this is a very unusual situation. But the – there has to be clear case law going against what the district court held. And have you cited any case law that says that under these circumstances where there's the – you know, the torture occurred in the UAE, but it – there were effects – harm to third parties in the United States. Is there any case that's addressed that directly and said there's no jurisdiction? I don't think there's that particular fact pattern. But I don't think that's, I think, the standard that you have to have – be able to show another case exactly replicating the fact pattern. I think the standards are clearly set out. And the analysis of the district court did not meet the standards on numerous crimes. So if there's no injury, if there's no arising out of the forum context of the claim, and if there's no purposeful direction actually towards the United States – and I think Schwarzenegger is a perfect one, probably the most on point as far as a rule for the allegation that the interference with the American business interests would not count as purposeful direction. Because it was – the court presumed there, although it did not have to reach a finding, it said even if the economic injuries suffered in the forum and even if the auto dealer in that case knew that Mr. Schwarzenegger lived in California, that without more doesn't get you personal jurisdiction because there has to be that express aiming towards the forum. And you just don't have that when you simply, under the allegations, based on mere subjective belief. I think you're not leaving your colleague very much time. Yes, Your Honor. I'll yield to Mr. O'Brien. Thank you. Thank you, Your Honor. The police accord, Tom O'Brien, on the issue of equitable tolling. Your Honor, the district court held that the plaintiff plausibly alleged that threats alone made it impossible for him to file this case prior to 2005. Isn't this a jury question? We believe it is not a jury question, Your Honor, for several reasons. First of all, we believe that there was no evidence produced by the plaintiff. And the court certainly has the duty to look at all the facts and the declarations in the light most favorable to the plaintiff. But even in that particular standard, the plaintiff has failed to show that it was impossible for him, on any objective level, to find his way to a courtroom from 1985 to 1995. In addition, Your Honor, the reason we believe it is not a jury question is because the district court certainly has an obligation as a gatekeeper to examine cases at the early outpost and decide whether or not this case is worthy of moving forward or not. In a case such as this, where the defendants, one in particular is a high-ranking individual in a foreign country very friendly to the United States, we think the court needs to take a look at that gatekeeping function and determine whether or not this case should move forward. Has the State Department come in and taken any position on this case? They have, Your Honor. The plaintiff also charged Sheikh Khalifa, who was the emir, the president of the UAE, and the State Department came in with a statement of interest, and the Department of Justice filed that, and that defendant has been removed for head of state immunity. The State Department didn't do that with respect to the remaining two defendants? That is correct, Your Honor. The head of state immunity belonged to the head of state, as the court is aware. Well, the second defendant, General Saeed, is what position does he have in the government? He had a high-ranking position, and I believe he is currently retired, Your Honor. Your Honor, the allegations, if the court is right, the district court is right, and the statute is told in 2005 at a minimum, the state charges the plaintiff The State Department, however, is a 10-year statute. The TVPA allows equitable tolling in very limited circumstances. The defendant either prevented the plaintiff from filing his case or extraordinary circumstances made it impossible, not improbable, not doable, for the plaintiff   The TVPA allows equitable tolling in very limited circumstances. difficult, not challenging, but impossible for the plaintiff to timely assert his claim. Counsel, the district court, in her order, I'm looking at page 30, cited a series of cases in which courts have allowed equitable tolling for various lengths of time, 13 years, Chilean military example, 17 years, 15 years, and the Saravia case, which the district court relied on, I think, more extensively, 23 years. Now, those are very, very lengthy. So by the time we get out to 23 years, to go to an additional, you know, two years doesn't seem like much of a stretch. So if we've allowed equitable tolling for lengthy periods of time, where is the clear error in the district court's ruling here? The clear error is here, Your Honor. It's not just the length of time, although here it's been almost a quarter of a century since these events allegedly occurred. It is the fact that in those other cases cited by the court, in fact, all the cases we've been able to, we think, find, there has never been a case where the plaintiff and his family, and that's the only expression of fear he has had, has been seated safely within the United States during that entire tolling period of time. The case is cited by... Because he didn't do anything until after, sometime after 2011, right? 2001. That was... He's alleging, he's saying he didn't feel, he didn't tell anybody or do anything because of the fear of reprisals and threats that he would be injured or his family would be injured. And so then his, I mean, his allegations are that after 9-11 he began to feel more comfortable with coming forward with these allegations. Right. Very briefly on that, Your Honor, it's an illogical argument only because September 11th, according to the plaintiff, he figured out several years later we have something now called the Department of Homeland Security, which is now set up to stop terrorist attacks coming from foreign nations into the U.S. That is correct. But the fear the plaintiff is afraid of is not a terrorist attack on him. His fear... May I continue? Yes, you may. The fear he's expressed is essentially secret agents coming down into the central district of California and hurting him and his family. So the Department of Homeland Security is really irrelevant. Again, I think that for him to say that it is not objectively reasonable, that it is impossible for him, in the safety of the U.S. And again, the only case anyone's been able to find completely safe within the U.S. and it's impossible for him to file a claim because a threat made 7,000 miles away 25 years ago. There's been no repeated threats, no visits, no phone calls. That makes it impossible to file a case in this district. It flies in the face of cases, the reality that this court's well aware of. In litigation, gang cases, organized crime, even sometimes business litigation, domestic violence, there are litigants in the United States who have very rare, real threats, immediate threats in the U.S. and they find their way into a court. For the plaintiff to say is it impossible for him based on these old threats we think is unreasonable. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court. Roger Clark on behalf of Khaled Hassan. Let me first address, if I may, the appropriateness of seeking relief or writ of mandamus. The Court has asked is there any case that clearly shows that the district court is in error? And I'll submit that there is not. In fact, it's just to the contrary. The two primary cases that the defendant relies on in its petition is the Nablusi case, which is an unpublished decision from a district court in Texas, which then relied in part on Price, which had some references in dicta, which is discussed at some length in the district court's order. Nablusi itself clearly says that there are situations where torture committed abroad against an American citizen will provide jurisdiction in courts in the United States. So even the case upon which they rely upon says that there are instances where we can be here doing exactly what we're doing now, which is to seek redress for this act of torture. And Nablusi was not a 4K2 case. It was based upon the Texas long-arm statute. It was addressed primarily on an argument that the contract that the defendant in that case had entered into with the plaintiff was to be formed in Texas, which the Court there rejected that argument. But most importantly in Nablusi, the Court pointed out that nowhere in that case did the plaintiff plead that there were effects in the United States, or in that case Texas, upon which the Calder effects test could be applied. And that's their best case, Your Honor. And even under that case, the result that this district court in this case reached would still be the same. Price, which was the Libyan case where Americans were kicked and handcuffed and treated bad while in jail in Libya, was primarily a Forensic Armed Immunities Act case, which was focused primarily on whether there was subject matter jurisdiction. And the Court ruled there that the acts pled didn't constitute torture or, I believe, false imprisonment. And then went on and said that Libya is not entitled to due process protections anyway. And then made an offhanded comment without any really analysis as to whether or not those individuals could plead in the United States based upon the effects test. Those are the two best cases. And they don't help them here. So there's nothing that the defendants can come here today with to show that the district court was clearly in error and it's ruling on the jurisdiction issue. And the Court ruled there that the acts pled didn't constitute torture or, I believe,   And then made an offhanded comment without any really analysis as to whether or not those individuals could plead in the United States based upon the effects test. And then went on and said that the district court was clearly in error and it's ruling on the jurisdiction issue. And as the Court noted, that that bombing was intended to affect interest in the United States and therefore there's an effect in the United States. But the plaintiffs in Muambi weren't American citizens. They were, I believe there was about 20, 12 or 20 Americans or 200 people killed, 3 or 4,000 injured. There's only 10 or 12, 14 were Americans. The plaintiffs in that case were Kenyans. And not only individuals but businesses. And they sued in the United States. And the Court there held that because that act of terrorism was intended to affect American interest in the United States, that those Kenyans and their businesses had the right to sue in the United States. And here we have acts that were committed upon Mr. Hassan. He was a very successful representative of this company called ITC, International Trading Circle, representing various American companies such as Raytheon, Bell Helicopters and others. And they were successfully negotiating contracts. The papers, the records show that there was a split in the royal family. ITC was a company that was owned by one faction of the royal family. The defendants had a trading company that was associated with the ruling faction of the royal family. And they had a split, a disagreement. And the way that the ruling faction of the royal family competed was to do exactly what they did to Mr. Hassan, put him in the secret prison for almost two years and torture him. Therefore, the American companies lost their contact through him and ITC, suffering loss of business and damages in the United States. That's precisely the Bancroft and Masters case. Or the Metropolitan Life case. And where there are targeted effects against the company. And those cases were California cases, not Rule 4K2 cases. They were specifically directed and targeted toward companies in California. And the court allowed those cases to proceed under the Calder effects case. So the argument would be, if we were here today on behalf of Raytheon, and would there be jurisdiction over these individuals under the Calder effects case based upon Bancroft and Masters, the answer clearly has to be yes. So then if Mr. Hassan were to join in that suit, the defendants basically take the position that the court would have to dismiss Mr. Hassan's suit. And I don't think that's the law. I think that the second prong of the specific jurisdiction case, or the specific jurisdiction requirement, is that this claim has to arise out of or relate to the same nucleus of facts. And it clearly does. Because the mechanism through which the defendants were trying to interfere with the American business interest and trying to interfere with operations of the United States government in the Middle East was through torturing Mr. Hassan. And how odd would it be that the other parties would have a right to bring an action because of that wrongful conduct, but yet the individual who was the vehicle who had to physically suffer the pain does not have a claim. It's incongruous, but legally it rises out of and relates to the same set of facts as a result of the actions that were targeted in the United States against these various American companies and the United States government. There are two types of targeting here. We've already talked at some length about the targeting of the American business interest and the American government, but also the personal threat. So there's two categories of targeting in the United States. The American businesses and the American government targeting is, you know, on the United States as a whole. The personal targeting is to California. And even though there were threats made to Mrs. Hassan and threats made to Mr. Hassan, as he was leaving, he was told that if you ever tell anybody about this, we will hunt you down and we will kill you. We will kill your wife. We will kill your children. And said, we have the means to do it. And these are very well-funded, high-ranking individuals. This is chilling, very chilling. And when he's released, he was told that this would happen if he ever told anybody about it. And look at the consequences that have happened in California. And Mr. Hassan gets back. He hires security guards. He creates security gates. He puts security cameras. He hires or has guard dogs. In the 1980s, he has to get a telephone for his car so that if he's, again, something similar happened to him as it did in Abu Dhabi, he can, you know, call somebody to let them know what's going on if he has the chance. These are consequences of being held in California. But the matter of fact, the damages just didn't stop just because he comes back to California. These threats were made to Mr. Hassan as he was going back to California, and the threats were made to his family in California, targeting him in California, intending to have the consequences that he would not take any action. And he suffered damages as a result. And I think it's important to draw the distinction between continuing emotional distress that arises from the torture that happened in Abu Dhabi, and now he's here in California. He needs medical attention. You know, down to my mind, he is speaking as an armchair psychiatrist. He had PTSD, and he needed treatment for it. Because he's afraid to go out and talk about this, he doesn't get treatment. That's a separate injury. He, you know, is taking these actions to guard his house. He's living in fear that someone is going to come around to Bush and put a bullet in his brain. That's a consequence in California separate from what happened in Abu Dhabi. He didn't bring his lawsuit. Just as late as just this night, he's afraid that something is going to happen, not only to him, but to his family. Well, let's talk about the equitable tolling and, you know, the reason that he didn't or that he did finally bring the lawsuit. When did he file the lawsuit? February 13, 2009. And the cause of action, are you alleging that, do you agree that it accrued in 1985, or do you think it's continuing injury? I think it's continuing injury. Could he have sued in 1985 in theory? He was harmed at that time. But I think there's continuing harm that goes beyond that because he's living in fear, and he's not seeking medical treatment. They basically prevented him from getting medical treatment. You know, the suggestion is made that it has to be impossible for him to file a suit. I respectfully submit that's not the standard. I think the standard is was he in reasonable apprehension that something might happen either to him, his wife, or his children if he goes public. And the court concluded that there is sufficient based upon the pleadings to make that determination and to conclude that it's a jury question. The suggestion that if there's, you have to be in El Salvador or some other country, not the United States, in order for this equitable tolling principle to apply would be a terrible precedent to set because it suggests, as asking this court to set a hard rule, that if you're in the United States, you can never have a reasonable apprehension that someone is going to be able to assassinate you or your family. These individuals who are defendants told Mr. Hassan that they had the means to reach him and his family, whether they be death squads, hit squads, assassins. We know that they had the capability to defund these operations. We know several of the individuals in the 9-11 operation were from the UAE and they were able to slip into the country. So what changed that he brought the lawsuit in 2009? When he realized the changes in the security procedures in the United States with various strengthened no-fly lists, checking higher security at the border, working in order to make sure that the American public was safe, was not porous any longer, he became convinced that it was safe, or at least safer, to come forward without fear, believing that these individuals would not be able to retaliate against him because he thought that there was a reasonable chance that their family would be safe in this country and put a hit on him. And the court below ruled that this is, as a matter of law, it's not objectively unreasonable. It's a question for the jury. And then coming back to whether or not relief is available to the defendants at Mandamus at this point, this is another reason not only is the issue on equitable tolling not against any clear decision anywhere, but the defendants also have a chance to continue to address this issue through a motion for summary judgment or through a trial, making Mandamus completely inappropriate for the equitable tolling issue as well. Your Honor, unless the Court has any questions, I believe I will sit down. Thank you. Thank you, counsel. You went over your time that I'll You went over your time, counsel, but I'll give you a couple minutes to Thank you, Your Honor. Just very briefly, it's footnote 2 of Mwane where the court disclaims effects jurisdiction, so I think Mwane has to be understood as a case of nationwide contacts where there's injury from a conspiracy directed at the United States. On a clear and indisputable right point, I think the question is once the Court determines the law, is the right to relief clear and indisputable? I think it is certainly on but-for causation and lack of injury. The Bancroft and MetLife cases that my colleague mentioned were all ones where the plaintiffs suffered injury in the Forum California. The issue on causation and arising out of is not simply whether it relates to the same facts. It's a but-for causation test, and that's something that is just never established that his injuries were but-for any of these acts to the United States. And finally, in terms of the threats, all the threats that he details, even if there were threats to do something in the United States, any injury that would have occurred from those threats that were in the UAE happened in the UAE. They are not U.S. injuries. And finally, on the equitable tolling point, the Eleventh Circuit has stated it's an impossibility standard, and it would have to be because there are many dangerous litigants, and if reasonable apprehension were all that you needed to do to any kind of retaliation from a defendant, then you would have equitable tolling on a broad array of claims. So I would submit that the facts cannot show that the U.S. was an unsafe place for him to file a claim at any point, certainly in the 90s and through 2001. Thank you, Your Honor. Thank you, Counsel. This case will be submitted and the session of the Court is adjourned. Any support for this session stands adjourned.
judges: Fletcher, Wardlaw, Bybee